IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

KIMBERLY BUHRO and
SHANNON DAVIS,

    Plaintiffs,

v.                                                  Civil Action No. 5:13-CV-81
                                                        (BAILEY)

SARA DENT, NEIL FOWKES,
ROBERT SAFREED, GUST KEPROS,
and SIX UNKNOWN WHEELING
POLICE OFFICERS, individually and in
their capacity as police officers of the City
of Wheeling,

and

CITY OF WHEELING, a West Virginia
political subdivision and municipal corporation,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

       Currently pending before this Court is Defendants' Motion to Dismiss [Doc. 9], filed on November 12, 2013.  Plaintiffs filed their response in opposition [Doc. 15] on December 10, 2013.  Defendants filed their reply brief [Doc. 17] on December 23, 2013.  This matter is now ripe for decision.  For the reasons set out below, this Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss **[Doc. 9]**.

**BACKGROUND**

I. **Factual Allegations**

The challenged Complaint [Doc. 1] contains the following allegations.  On or about July 10, 2011, the plaintiffs were patrons at River City Restaurant ("River City"), in Wheeling, where they were attending plaintiff Davis's ten year high school reunion.  Shortly after midnight, while the plaintiffs and others were at River City, the music suddenly stopped, the lights were turned all the way on, and approximately ten (10) members of the Wheeling Police Department, including defendants Dent, Fowkes, Safreed, Kepros, and the Unknown Officers, entered River City.  The officers spread out throughout River City and began yelling loudly for the patrons to put their drinks down and immediately leave.  (Id. at ¶ 7).  Plaintiffs began to comply with the demands of the officers.  (Id. at ¶ 8).

As plaintiff Davis was closing out her check, she remarked to another patron that she was surprised how many officers were required to close a bar.  (Id. at ¶ 9).  Defendant Dent, overhearing plaintiff Davis's comment, began to aggressively verbally berate plaintiff Davis, demanding that she immediately leave the premises despite the fact that she was already in the process of leaving.  Plaintiff Davis continued complying with the directive of the officers and moved toward the front door of River City to leave.

As she moved to exit River City, plaintiff Davis protested that she had done nothing wrong to deserve such harsh verbal treatment.  Defendant Dent followed plaintiff Davis as she was exiting, continuously raising her voice to the point that defendant Dent lost all control, was shrieking, and cursing at plaintiff Davis and hysterically demanding that plaintiff Davis "get the fuck out of here!"  (Id. at ¶ 10).  Defendant Dent began to aggressively close in on plaintiff Davis as they moved toward the door.  Perceiving that defendant Dent

intended to imminently batter plaintiff Davis and in light of defendant Dent's erratic and hysterical conduct, plaintiff Buhro placed her arm protectively around plaintiff Davis in an effort to shield her from defendant Dent. (Id. at ¶ 11). Then, defendants Dent, Fowkes, Safreed, Kepros, and the Unknown Officers intentionally, unlawfully, and without lawful provocation, justification or excuse battered, tackled and struck the plaintiffs and drove them to the ground. (Id. at ¶ 12). As a direct and proximate result, the plaintiffs sustained injury to their bodies, persons, and minds, including, specifically, a broken nose by plaintiff Davis. Each plaintiff suffered extreme fear, terror, mental torment and anguish, which injuries are or may be permanent in nature. (Id. at ¶ 13).

Defendants Dent, Fowkes, Safreed, Kepros, and the Unknown Officers thereafter unlawfully, and in the absence of probable cause, arrested plaintiff Davis for disorderly conduct and obstructing a police officer. (Id. at ¶ 14). Defendants also unlawfully, and in the absence of probable cause, arrested plaintiff Buhro for battery on a police officer and obstructing a police officer. (Id. at ¶ 15). The City sanctioned, ratified, and condoned the actions of the defendant Officers. (Id. at ¶ 16). Plaintiffs were thereafter arrested, detained, and incarcerated against their will and were restrained, imprisoned and transported and thereafter subjected to the booking process during which time their liberty was curtailed and they experienced fear, humiliation, and anxiety. (Id. at ¶ 17). The criminal charges brought by the defendants against the plaintiffs were done so in a retaliatory fashion and with malice and recklessness or actual knowledge by the defendants of the falsity of the criminal allegations. (Id. at ¶ 18). Plaintiffs thereafter incurred fees and expenses associated with posting bond to secure their release from the jail, hiring counsel to defend them against the allegations of the defendants, and related expenses, including

travel and associated expenses. (Id. at ¶ 19). The criminal complaints against Davis and Buhro were ultimately dismissed. (Id. at ¶ 20).

Defendants acted in concert to commit an unlawful act or to commit a lawful act through unlawful means by engaging in an overt act, to wit: arresting the plaintiffs in the absence of lawfully issued process or probable cause. (Id. at ¶ 21). Defendants, in unlawfully arresting the plaintiffs in the absence of probable cause or lawfully issued process, were implementing, complying with, executing, following, and fulfilling a policy, regulation, statement, ordinance, procedure or custom created, directed, sanctioned, ratified, promulgated, adopted and/or approved by the City. (Id. at ¶ 22). At all times relevant hereto, the plaintiffs had committed no offense for which they could have been subjected to an arrest. (Id. at ¶ 24).

## II.   Procedural History

The plaintiffs filed their Complaint [Doc. 1] in this Court on June 27, 2013. The Complaint [Doc. 1] alleges violations of 42 U.S.C. § 1983, arising from the plaintiffs' June 10, 2011, arrest, alleging, *inter alia*, excessive use of force in violation of the Fourth Amendment; interference with constitutionally protected rights, including the First, Fourth and Fourteenth Amendments, as well as West Virginia Constitution Article III, § 6; and State common law claims for outrage/intentional infliction of emotional distress, battery, assault, negligent retention and hiring, civil conspiracy, and negligent training and supervision.

The City of Wheeling has moved to dismiss the Section 1983 claims, all intentional tort claims against the City, and the negligent hiring and retention claim. Defendants also move that the entire Complaint be dismissed because a specific dollar amount is contained

in the *ad damnum* clause. Finally, defendants move to dismiss claims for exemplary damages.

## **LEGAL STANDARD**

A. Fed. R. Civ. P. 12(b)(6)

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' **Bell Atl. Corp. v. Twombly**, 127 S.Ct. 1955, 1974 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 1974.

**DISCUSSION**

A.  Section 1983 Liability

1.  Cities are "persons" for purposes of Section 1983

The defendants, citing to ***Morton v. Welcome***, 2013 U.S. Dist. LEXIS 106516 (N.D. W.Va. 2013), argue that "[c]laims under § 1983 are directed at 'persons' and political subdivisions, such as the City of Wheeling, are not amenable to suit." [Doc. 9]. The Report and Recommendation in that case stated that "the plaintiff could not raise claims against defendant Berkeley County Sheriff Department and defendant Martinsburg City Police Department because 'these entities are not persons subject to suit under 42 U.S.C. 1983.'" While correct, perhaps this Court could have better explained its holding in that case. To clarify, those parties were not proper party defendants as they are integral parts of the city/county government and are merely the vehicle through which the city/county government fulfills its policing functions. *See **Shelby v. City of Atlanta***, 578 F.Supp.2d 1368 (N.D. Ga. 1984); W.Va. Code § 8-14-1. In that case, the proper parties thus would have been the City of Martinsburg and the Berkeley County Commission.

This Court believes the defendants' confusion lies in its mistaken application of Eleventh Amendment protection. States are protected by he Eleventh Amendment, while municipalities are not. *See **Monell v. Dep't of Soc. Servs.**,* 436 U.S. 658, 690 (1978). Thus, the Supreme Court was careful to delineate its holding in ***Monell*** to include only "local government units which are not considered part of the State for Eleventh Amendment purposes." Simply put, "a State is not a person within the meaning of § 1983." ***Will v. Michigan Dept. of State Police***, 491 U.S. 58, 64 (1989). A municipality, such as the

6

defendant City of Wheeling, however, is a "person" within the meaning of Section 1983.

Specifically, "section 1983 creates a cause of action against any 'person' who, under color of state law, violates a party's federally protected rights . . .. Municipalities . . . are 'persons' subject to suit under section 1983. **Monell v. Dep't of Soc. Servs.**, 436 U.S. 658, 690 (1978); see also **Smallwood v. Jefferson County**, 753 F.Supp 657, 659 (W.D. Ky. 1991) ('Because cities are "persons" and because counties are much like cities, then logically, counties are "persons."').'" **Gilco v. Logan Cty. Comm.**, 2012 WL 3580056 (S.D. W.Va. August 17, 2012) (Copenhaver, J.).

The above language clearly establishes that municipalities, counties, cities, and the like are "persons" for purposes of Section 1983 liability. Accordingly, the Motion is **DENIED** insofar as it pertains to this argument.

2. Official Capacity Claims under Section 1983

Next, the defendant moves to dismiss the official capacity claims, citing **Dunn v. Stewart**, 2012 U.S. Dist. LEXIS 185314 (N.D. W.Va. 2013), by arguing that "Section 1983 claims are not viable against employees of political subdivision[s] in their official capacity." In so doing, the defendants again mistakenly presuppose that a city is not a "person" for Section 1983 liability.

Official-capacity suits under Section 1983 can, however, be brought in limited circumstances. Such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." **Monell v. New York City Dept. of Soc. Servs.**, 436 U.S. 658, 690, n. 55 (1978). "'A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat*

7

*superior* or vicarious liability will not attach under § 1983.' **City of Canton, Ohio v. Harris**, 489 U.S. 378, 385 (1989) (emphasis in original).  To prove that a municipality itself was responsible for a constitutional deprivation, a plaintiff is required 'to identify a municipal "policy" or "custom" that caused the plaintiff's injury.' **Board of County Com'rs of Bryan County, Okl. v. Brown**, 520 U.S. 397, 403-04 (1997)." **Gilco v. Logan Cty. Comm.**, 2012 WL 3580056 (S.D. W.Va. August 17, 2012) (Copenhaver, J.).

As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  **Brandon v. Holt**, 469 U.S. 464, 471-472 (1985).  It is not a suit against the official personally, for the real party in interest is the entity.  Thus, while an award of damages against an official in his individual capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.  **Id**.

The Supreme Court has held, however, that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  **Monell**, 436 U.S. at 689.  The Court found that in light of the language of the statute presupposing liability on one who "subjects [a person], or causes [that person] to be subjected, to a deprivation of federal rights," the statute "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."  **Id**. at 692 (internal quotations omitted).  Thus, liability cannot be based solely on the unauthorized acts of an employee. *See* **Monell**, 436 U.S. at 691.  Therefore, the Court has consistently refused to hold municipalities liable under a theory of *respondeat superior*.

See ***Oklahoma City v. Tuttle***, 471 U.S. 808, 818 (1985); ***Pembaur v. Cincinnati***, 475 U.S. 469, 478-79 (1986); ***St. Louis v. Praprotnik***, 485 U.S. 112, 122 (1988) (plurality opinion); ***Canton v. Harris***, 489 U.S. 378, 392 (1989).  Instead, the plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury.  *See* ***Monell***, at 694; ***Pembaur***, at 480-81; ***Canton***, at 389.

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." ***Bryan County v. Brown***, 520 U.S. 397, 403-404 (1997) (citing ***Monell***, 436 U.S. at 694).  Furthermore, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." ***Brown***, 520 U.S. at 404.

"Two basic theories have emerged for imposing municipal liability in the more typical situation where fault and causation cannot be laid to a municipal policy 'itself unconstitutional.' The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers." ***Spell v. McDaniel***, 824 F.2d at 1389.  In the case at bar, there is no allegation that the use of excessive force was an official policy of the City of Wheeling.  "A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread

pattern of unconstitutional conduct by police officers of which the specific violation is simply an example." *Id*. "[T]he most relevant Supreme Court decisions now require that each of the theories be carefully controlled at critical points to avoid imposing liability flatly rejected by *Monell*. Those critical points are (1) identifying the specific 'policy' or 'custom'; (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation. *See Tuttle*, 471 U.S. at 822-24." *Id*.

Practically speaking, courts are aware that "without having been directly authorized, or tacitly encouraged, or inadequately trained in specific ways by responsible municipal policymakers, police officers . . . may fall into patterns of unconstitutional conduct in their encounters with . . . arrestees. This may result *in origin* to any fault of municipal policymakers to warrant treating the conduct as a reflection of 'municipal policy' in the *Monell* sense." *Id*. at 1390 (emphasis in original). "If these constitutional practices become sufficiently widespread, however, they may assume the quality of 'custom or usage' . . .." *Id.*, citing *Adickes v. S. H. Kress & Co.*, 398 U.S. at 167-68. "Such a developed 'custom or usage' may then become the basis of municipal liability, but only if its continued existence can be laid to the fault of municipal policymakers, and a sufficient causal connection between the 'municipal custom and usage' and the specific violation can then be established." *Id*. "[J]ust as proof of a single violation will not support the inference that the violation resulted from a municipal 'policy' of deficient training, *see Tuttle* [ ], so it obviously cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices, *see Wellington [v. Daniels*, 717 F.2d 932, 936

(4th Cir. 1983)]." *Id*. at 1391. **Tuttle**, *supra* (overly tolerant concepts of policy and causation would impose municipal liability "simply because the municipality hired one 'bad apple.'").

In their Complaint, the plaintiffs allege that "the City knew and had actual knowledge of the proclivity and tendency for violence, excessive force, abusiveness, and intemperance of [the defendant officers], yet the City, despite its actual knowledge, nevertheless hired and employed [the defendants] and thereafter permitted and authorized them to continue in the capacity as police officers and retained them as police officers, thereby endorsing and ratifying their on-going pattern of misconduct punctuated by violence, excessive force, and abusiveness." [Doc. 1 at ¶ 5]. In so doing, the Complaint alleges that the defendants were "implementing, complying with, executing, following, and fulfilling a policy, regulation, statement, ordinance, procedure or custom created, directed, sanctioned, ratified, promulgated, adopted and/or approved by the City." (Id. at ¶ 22). Having viewed these allegations in a light most favorable to the plaintiffs, this Court finds the plaintiffs have sufficiently alleged a municipal "policy" or "custom" that caused the plaintiffs' injuries. *See* **Monell**, at 694; **Pembaur**, at 480-81; **Canton**, at 389. Accordingly, the Motion to Dismiss is **DENIED** insofar as it pertains to this argument.

B.  Intentional Tort Claims against the City of Wheeling

The plaintiffs have asserted several intentional tort claims against the City of Wheeling including: Outrage/Intentional Infliction of Emotional Distress, Battery, Assault, and Civil Conspiracy. Under West Virginia law, political subdivisions cannot be vicariously liable for the intentional torts of their employees. *See* **Mallamo v. Town of Riversville**,

11

197 W. Va. 616, (1996). The plaintiffs do not dispute this. Therefore, inasmuch as the City of Wheeling may only be held liable for the negligent acts of its employees, the City of Wheeling is immune from liability for their intentional torts. Accordingly, the Motion to Dismiss these claims is **GRANTED** insofar as it pertains to the City of Wheeling.

C.    Negligent Hiring and Retention

Defendants also argue that the plaintiffs have failed to sufficiently allege a Negligent Hiring and Retention claim against the City of Wheeling. Specifically, the defendants argue that the plaintiffs have failed to allege that the City of Wheeling failed to conduct an investigation into the defendant police officers' backgrounds or that any investigation that the City of Wheeling did perform was inadequate. Defendants argue that the plaintiffs' "vague allegation" that the City "knew or should have known of the defendant officers' proclivity for violence" is insufficient to support this claim [Doc. 10 at 5].

West Virginia recognizes a cause of action for negligent hiring. ***State ex rel. West Virginia State Police v. Taylor***, 499 S.E.2d 283, 289 n. 7 (W. Va. 1997). The West Virginia Supreme Court of Appeals applies the following test for a claim based on negligent hiring under West Virginia state law:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Virginia Dep't of Pub. Safety*, 202 W. Va. 189, 193, 503 S.E.2d 502, 506 (1998); see also ***Webb v. Raleigh Cnty. Sheriff's Dep't***, 761 F. Supp. 2d 378, 397 (S.D. W.Va. 2010).

"In evaluating these questions, courts look to 'the nature of the employee's job assignment, duties and responsibilities – with the employer's duty with respect to hiring or retaining an employee increasing, as the risks to third persons associated with a particular job increase.'  ***McCormick***, 503 S.E.2d at 507.  Therefore, an 'employer's duty is heightened' when the prospective employee is a police officer, as an unfit police officer may pose a substantial risk to third persons.  ***Woods [v. Town of Danville]***, 712 F.Supp.2d [502] at 514 [(S.D. W.Va. 2010)(Goodwin, C.J.)] (finding heightened employer duty to screen officer candidates because '[p]olice officers are, among other things, permitted to carry guns, use necessary force to effect arrest, and enter civilian residences in certain circumstances.')."  ***Smith v. Lusk***, 2012 WL 1389866 (S.D. W. Va.)(Chambers, J.).

In their Complaint, the plaintiffs allege that "the City knew and had actual knowledge of the proclivity and tendency for violence, excessive force, abusiveness, and intemperance" [Doc. 1 at ¶ 42].  Further, the plaintiffs allege that despite this knowledge, the City retained the defendant officers "when it knew or in the exercise of due and reasonable diligence and care should have known [of these proclivities]." Id.

This Court does not find it fatal to the plaintiffs claim that the Complaint does not specifically allege that the City of Wheeling "failed to conduct an investigation into the defendant police officers' backgrounds." While perhaps inartfully plead, this Court finds the plaintiffs' use of the phrase "in the exercise of due and reasonable diligence and care

13

should have known" is tantamount to pleading a failure to "reasonably investigate." These factual allegations, taken as true, support a claim for relief above the speculative level. *See* **Twombly**, 550 U.S. at 555. Furthermore, the plaintiffs allege that the City had actual knowledge of misconduct, yet continued to employ the defendant officers knowing of the risk it may pose to third parties such as the plaintiffs. Thus, viewing the Complaint in a light most favorable to the non-moving party, the plaintiff has alleged sufficient facts as to whether the City of Wheeling should have been aware that the defendant officers were a risk to the community, and should have reasonably foreseen the risk associated with retaining these defendants. Accordingly, the Motion to Dismiss is **DENIED** insofar as it pertains to the Negligent Retention and Hiring claim.

D.   West Virginia Code § 29-12A-6(d) precludes a demand for a specific dollar amount

Defendants seek to dismiss the entirety of the Complaint because "despite the clear language of West Virginia Code § 29-12A-6(d), the plaintiffs have demanded a specific dollar amount in their Complaint." [Doc. 9 at 2]. That Section specifically provides:

> In the complaint filed in a civil action against a political subdivision, or an employee of a political subdivision to recover damages for injury, death, or loss, the persons or property allegedly caused by an act or omission of such political subdivision or employee, whether filed in an original action, . . . the complainant shall include a demand for judgment for the damages that the . . . jury in a jury trial finds that the Complainant is entitled to be awarded, but shall not specify in the demand any monetary amount for damages sought.

The plaintiffs agree that a monetary figure should not be included in the prayer for

14

relief; however, the plaintiffs correctly argue that such an improvident inclusion of a monetary figure in the *ad damnum* clause should not be grounds for dismissal. Rather, the plaintiffs suggest – and this Court agrees – that a more proper remedy is to strike the specific figure from the Complaint. Accordingly, the defendants' Motion to Dismiss based on this ground is **DENIED**; however, this Court hereby **STRIKES** the dollar figure from the Complaint.

E. <u>West Virginia Code § 29-12A-7(a) precludes claims for exemplary damages against the City of Wheeling and defendants in their official capacities</u>

The plaintiffs' Complaint seeks, *inter alia*, exemplary damages [Doc. 1 at p. 12]. The City of Wheeling and the defendant police officers being sued in their official capacities argue they are immune from punitive or exemplary damages under West Virginia Code § 29-12A-7(a). That Section provides that "in any civil action involving a political subdivision, or any of its employees as a party defendant, an award of punitive, or exemplary damages against such political subdivision is prohibited." The plaintiff concedes that punitive damages are prohibited against a political subdivision and its employees insofar as it relates to any State law claims. This Court agrees. However, exemplary damages *are* available under 42 U.S.C. § 1983 "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" **Lowery v. Circuit City Stores, Inc.**, 206 F.3d 431, 441 (4th Cir. 2000)(quoting **Smith v. Wade**, 461 U.S. 30, 56 (1983). Accordingly, the Motion to Dismiss the plaintiffs' claim for exemplary damages is **GRANTED IN PART AND DENIED IN PART.**

## **CONCLUSION**

For the foregoing reasons, this Court finds that the Defendants' Motion to Dismiss **[Doc. 9]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: February 5, 2014.

*[signature]*

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE